UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ALISON S. MAZINDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:15-cv-00752-SEB-TAB |
| | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HOMELAND SECURITY, | ) | |
| UNITED STATES CUSTOMS AND | ) | |
| BORDER PROTECTION, | ) | |
| UNITED STATES CITIZENSHIP AND | ) | |
| IMMIGRATION SERVICES, | ) | |
| KAMSING V. LEE in his official capacity as | ) | |
| an agent and employee of a United States | ) | |
| government agency, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION ON DEFENDANTS'
COMBINED MOTION TO DISMISS AND FOR SUMMARY JUDGMENT**

I.    **Introduction**

Plaintiff Alison S. Mazinda wanted to become a United States citizen, but his application

for naturalization was denied, and his efforts to learn the reasons underlying the denial are the

foundation for this case. This is not simply a case about whether Defendants violated the

Freedom Of Information Act. Mazinda alleges that Defendants circumvented the Immigration

and Nationality Act regulations and violated the Administrative Procedures Act by directing him

to FOIA, then giving him the runaround while sitting on his request.

Plaintiff's complaint asserts two claims: (1) Defendants violated FOIA by failing to

respond to his request within twenty working days, (2) Defendants violated APA by failing to

abide by the INA regulations. At the outset, the Court notes that these claims only apply to

Mazinda's individual case. Although Mazinda purports to bring an action for injunctive relief on

behalf of himself and "all pending and future applicants for immigration benefits who are issued a notice of denial from the [United States Citizenship and Immigration Services] Indianapolis Field Office," he has not moved to certify a class and does not have standing to assert the rights of third parties.  [Filing No. 1, at ECF p. 5.]  Mazinda may have wanted to leave open a possibility of pursuing this as a class action.  However, he fails to address it in his brief. Mazinda's claims only revolve around his individual application for naturalization and the specific facts related to the decision to deny his application.  Thus, Mazinda's claims are not analyzed from a class perspective.

As for Mazinda's individual claims, they do not survive the instant motion.  Once Defendants responded to Mazinda's FOIA request, that claim was mooted.  Furthermore, Defendants performed an adequate search in making the FOIA response.  Mazinda's APA claim also provides him no relief because USCIS was not required to produce the derogatory information resulting in his ineligibility for naturalization.  Additionally, that information was revealed to Mazinda in an interview, where he rebutted the evidence against him.

For these reasons, as fully explained below, the Magistrate Judge recommends granting Defendants' motion.  However, entering judgment should be delayed so that Mazinda has an opportunity to amend his complaint.  Mazinda's complaint alludes to his intention to make a policy claim.  If Mazinda wants to clarify and assert this claim, he should be allowed to do so.

## II.    Factual background

For purposes of Rule 12(b)(1), Rule 12(b)(6), and Rule 56, the Court takes the facts as alleged and views them in the light most favorable to Mazinda. *Dixon v. Cty. of Cook*, 819 F.3d 343, 346 (7th Cir. 2016).  The only differences are that the facts for the Rule 12(b)(6) ruling are limited to those in the complaint, whereas the Court may look at additional evidence submitted

by the parties for both the Rule 12(b)(1) and Rule 56 ruling.  *Id*; *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 444 (7th Cir. 2009).  The facts of this case are organized below accordingly.

### A.   Mazinda's complaint

On October 17, 2014, Mazinda filed a Form N-400, Application for Naturalization. Mazinda indicated on the application that he was never a member of the Sudan People's Liberation Movement.  On January 6, 2015, USCIS interviewed Mazinda at its Indianapolis field office to determine his eligibility for citizenship.  During that interview, Mazinda denied having been a member of the SPLM and explained that he had served as a volunteer in South Sudan during the 2011 referendum.[1]

On February 13, 2015, USCIS denied Mazinda's naturalization application.  The denial notice stated that Mazinda did not establish himself as a person of good moral character because he gave false testimony under oath in order to receive an immigration benefit.  The notice also stated that USCIS possessed records from a port of entry on January 31, 2011, that Mazinda told Customs and Border Patrol that he was working for the SPLM as an executive director.  Mazinda requested a hearing on the denial.

To prepare for that hearing, Mazinda made several requests to access the CBP record cited in the denial notice.  On March 10, 2015, Mazinda made a written request by certified mail to Kamsing V. Lee, the director of the USCIS Indianapolis filed office.  On March 16, 2015, Mazinda sent an email request to schedule a time to review his A-File or at least the CBP record,

---

[1] The Magistrate Judge notes that Mazinda's complaint omits that on January 13, 2015, he was interviewed by USCIS.  The January 13 interview is significant and is discussed in detail later in this section, where the summary judgment record is set forth.

and also filed a FOIA request with CBP.  On March 17, 2015, Lee replied and gave Mazinda an option to file a FOIA request.  That same day, Mazinda filed a FOIA request with USCIS.

On March 27, 2015, Mazinda received a response from USCIS that because the records requested were of a personal nature, the Department of Homeland Security required a verification of identity from Mazinda before disclosing the information.  On April 7, 2015, Mazinda electronically sent USCIS his notarized verification of identity.  However, Mazinda received no response.  On May 11, 2015, Mazinda filed this complaint, stating "[m]ore than twenty (20) days have passed since Plaintiff filed his FOIA request with CBP and USCIS and he has not received a copy or access to his file."  [Filing No. 1, at ECF p. 9.]

In the meantime, Mazinda's immigration case is still pending.  USCIS had scheduled Mazinda to appear at the Indianapolis field office for the hearing on his denial on April 23, 2015.  On March 30, 2015, Mazinda forwarded the USCIS FOIA request to Lee, who agreed to hold his case in abeyance until the FOIA request is processed.  On April 14, 2015, Lee stated in an email that USCIS will postpone Mazinda's hearing until receiving notice that the FOIA request is fulfilled.  Mazinda responded, asking Lee if USCIS has a regulation or directive that requires Mazinda to make a FOIA request because 8 C.F.R. § 103.2(b)(16) should permit him to inspect the record constituting the basis for the decision to deny his application.  On April 21, 2015, Lee replied,

> We believe that by holding the case in abeyance as the FOIA is processed allows this inspection.  Our agency has personnel that are specifically trained to process these requests correctly.  As the exceptions to the Act can be complicated, it has lately been the policy of this office, and I believe the Service, to let the FOIA request be processed before we take an action on a specific case.

[Filing No. 1, at ECF p. 8.]  Mazinda's complaint alleges that (1) Defendants violated FOIA, and (2) Defendants violated the APA.

4

**B.      Evidence concerning subject matter jurisdiction**

Defendants argue this Court does not have subject matter jurisdiction over Mazinda's

FOIA claim because they have responded, making the claim moot.  The relevant evidence

outside the pleadings that the Court will look at is provided here.

*1.      Mazinda's CBP FOIA Request*

On March 16, 2015, Mazinda submitted a FOIA request to CBP.  The description of the

information sought is:

> Mr. Mazinda's N-400 was denied on 13 February 2015, and the denial referred to
> "records" that reveal "on January 31, 2011, at a port of entry [Mr. Mazinda]
> acknowledged to Customs and Border Security and/or Port Authority that [he]
> [was] living and working in Sudan for the Government and [he] [was] working for
> the Sudan People Liberation Movement (SPLM) as an Executive Director."  We
> hereby request these records from USCBP.  Mr. Mazinda has filed Form N-336,
> requesting a hearing on the denial, and must have these records before a hearing is
> scheduled.

[Filing No. 34-10.]  The request was perfected by CBP on March 17, 2015, and assigned a due

date of April 14, 2015.  [Filing No. 20-4.]

On August 17, 2015, CBP responded to this FOIA request:

> U.S. Citizenship and Immigration Services (CIS) is the custodian of Mr. Mazinda's
> A-file and has provided responsive documents, including CBP documents, to you
> in response to this FOIA.  After reviewing the response CIS provided, and
> comparing against our system of records, we have determined that CIS has provided
> all responsive CBP information to this request.  CBP has no further documents
> responsive to your request, and will close your FOIA.

[Filing No. 34-30.]

*2.      Mazinda's USCIS FOIA request*

On March 17, 2015, Mazinda submitted a FOIA request to USCIS.  The description of

the information sought is:

>Mr. MAZINDA's N-400 was denied on 13 February 2015, and the denial referred to "records" that reveal "on January 31, 2011, at a port of entry [Mr. MAZINDA] acknowledged to Customs and Border Security and/or Port Authority that [he] [was] living and working in Sudan for the Government and [he] [was] working for the Sudan People Liberation Movement (SPLM) as an Executive Director." We hereby request the records USCIS referred to in the denial. We have filed Form N-336 Request for Hearing, and Mr. MAZINDA will be prejudiced if he is unable, through counsel, to examine the evidence upon which USCIS based the denial.

[Filing No. 34-12.] An identical request was made on April 7, 2015, with the addition of,

"Update: Mr. MAZINDA's hearing has been scheduled at the Indianapolis Field Office on 23

April 2015 at 10:00 am." [Filing No. 34-18, at ECF p. 1.] The April 7 request also included

Mazinda's signed and notarized Verification of Identity and Request for Personal Information.

On July 21, 2015, USCIS responded to this FOIA request:

>We have completed the review of all documents and have identified five pages that are responsive to your request. Enclosed are those five pages released in part. We have reviewed and have determined to release all information except those portions that are exempt pursuant to 5 U.S.C. § 552a (k)(2) of the PA and 5 U.S.C. § 552 (b)(7)(C) and (b)(7)(E) of the FOIA.

[Filing No. 20-2, at ECF p. 16-17.] The letter further explained each exemption that USCIS

applied. Exemption (k)(2) protects investigatory material compiled for law enforcement

purposes. Exemption (b)(7)(C) protects personal information of third parties in law enforcement

records. Exemption (b)(7)(E) protects guidelines, techniques, and procedures for law

enforcement investigations or prosecutions.

### C.    Summary judgment record

#### 1.    *USCIS's interview of Mazinda*

USCIS interviewed Mazinda twice about his naturalization application—on January 6,

2015, and on January 13, 2015. [Filing No. 34-1, at ECF p. 2.] At the second interview, which

was recorded and transcribed, the USCIS officer asked Mazinda about his encounters with CBP

officials upon his return to the United States from travels to South Sudan. The examiner asked

6

Mazinda if he told CBP officials "that you were living and working in Sudan." [Filing No. 34-5, at ECF p. 8.] Mazinda stated, "when they asked me, I told them I had been in Sudan, yes, I had stayed there, and I was volunteering." *Id.* Mazinda described volunteering as a translator and working with computers. The examiner stated, "One of the things that the port of entry put down is that you were with an organization: the Sudan People Liberation Movement." [Filing No. 34-5, at ECF p. 9.] Mazinda explained that SPLM may have come up because they helped him buy a ticket. Mazinda stated, "I was actually never involved with the movement, but I guess my only connection with them was when I went to South Sudan and was volunteering." [Filing No. 34-5, at ECF p. 11-12.]

The USCIS examiner then read Mazinda the information from CBP. "[T]hey said that you were currently working for the Sudan People Liberation Movement as an executive director and is currently setting up separation of the north and the south, which will take place in January 2011." [Filing No. 34-5, at ECF p. 13.] Mazinda responded, "No," and explained that he was a volunteer and helped with voters' education or referendum education, and central registration education. *Id.* The officer then asked, "So how did they get the idea that you were an executive director of the movement?" [Filing No. 34-5, at ECF p. 14.] Mazinda stated, "They might have collected the information from the travel document that I had at the time because it was issued by Sudan. Probably from there, they assumed I was a member of the SPLM." *Id.*

Mazinda stated, "I am not a member of SPLM. I have never been a member of that organization. That is why I answered 'No'" to the application question about belonging to any groups, clubs, or organization. [Filing No. 34-5, at ECF p. 15.] The officer stated, "I still don't understand why they would think that you were a member of the group when they talked to you at the port of entry, that you were a member of the SPLM, especially an executive director."

[Filing No. 34-5, at ECF p. 16-17.]  Mazinda could not remember his conversation with CBP, but stated that "there is no way I could be—even if I was going to be a member of the SPLM, to go on to an executive director."  [Filing No. 34-5, at ECF p. 17.]

       2.      *USCIS's denial letter to Mazinda*

In a letter dated February 13, 2015, Mazinda was advised that USCIS determined he is not eligible for naturalization.  USCIS found that Mazinda gave false testimony under oath with the intent to obtain an immigration benefit.  USCIS concluded that Mazinda had not established himself as a person of good moral character during the statutory period, between the present and October 17, 2009.  Thus, USCIS found Mazinda ineligible for naturalization.

According to USCIS's denial letter, Mazinda falsely testified under oath that he was not a member of SPLM, but volunteered to help.  The letter notified Mazinda that his denial was based on derogatory information, stating:

> Records of the Service reveal that on January 31, 2011, at a port of entry you acknowledged to Customs and Border Security and/or Port Authority that you were living and working in Sudan for the Government and you were working for the Sudan people Liberation Movement (SPLM) as an Executive Director.

[Filing No. 20-2, at ECF p. 14.]  The letter explained that this is counter to Mazinda's claim on his naturalization application that he has "not been a member of, involved in, or in any way associated with any organization, association, fund, foundation, party, club, society, or similar group in the United States or in any other location in the world."  *Id.*  Mazinda testified and signed a sworn statement that he has never "been a member of any clubs, groups, or organizations, have never been involved in any association, fund, foundation, party or society."  *Id.*  Thus, USCIS found that Mazinda gave "false testimony under oath with the intent to obtain an immigration benefit."  *Id.*

3.     *USCIS's response to Mazinda's FOIA request*

Defendants also submitted the declaration of Jill A. Eggleston, the assistant director of

USCIS's FOIA unit.  In that declaration, Eggleston discusses USCIS's standard FOIA procedure

as well as Mazinda's FOIA request.  Eggleston explains that in Mazinda's case, prior to USCIS

making its July 21 FOIA response, its National Records Center sent a letter to Mazinda dated

April 10, 2015, acknowledging receipt of his FOIA request and providing a control number.

[Filing No. 20-2, at ECF p. 10.]  According to Eggleston, USCIS assigned Mazinda's FOIA

request to NRC, which determined that records related to adjudicating Mazinda's naturalization

application were located in his A-File.  Mazinda's A-File is tracked by the NFTS database.  NRC

scanned Mazinda's A-File into its FOIA processing system, which is a computerized system that

allows NRC staff to review records and process FOIA requests electronically.  Upon review of

Mazinda's A-File, NRC determined that the adjudicator in the Indianapolis field office needed to

identify exactly which records he referred to in the denial letter.  [Filing No. 20-1, at ECF p. 5.]

The adjudicator complied, reviewed Mazinda's entire A-File, and identified five pages that he

relied upon in denying Mazinda's naturalization application.  NRC scanned those five pages into

its FOIA processing system, and determined it was responsive to the FOIA request.  NRC

reviewed the document and removed exempt portions.  Then, NRC sent the document to

Mazinda along with a cover letter.

4. *Mazinda's administrative appeal of his naturalization denial*

On March 10, 2015, Mazinda's attorney emailed Lee, director of the USCIS Indianapolis

field office, "requesting the opportunity to review Mr. MAZINDA's alien file, as it is compelled

by 8 C.F.R. 103.2(b)(16)."  [Filing No. 34-7, at ECF p. 1.]  Attached to the email was a March

10 letter to Lee stating, "It is the duty of US Citizenship and Immigration Services under 8

C.F.R. § 103.2(b)(16) to provide the derogatory information that formed the basis of the denial."

[Filing No. 34-7, at ECF p. 3.]  On March 16, 2015, Mazinda's counsel sent a follow-up email to

Lee, stating, "I would like to schedule a time to review Mr. Mazinda's alien file or, at the very

least, the record cited in the denial of his application for naturalization.  [Filing No. 34-9, at ECF

p. 1.]

On March 17, 2015, Lee responded that, "There is an option to file a Freedom of

Information Act ("FOIA") request," which Mazinda submitted that day.  [Filing No. 34-11;

Filing No. 34-12.]  On March 30, 2015, Mazinda responded, advising the FOIA had been

submitted and asking for a time to examine Mazinda's A-File.  On April 6, 2015, USCIS

responded, stating, "We will hold the case in abeyance until the FOIA is processed."  [Filing No.

3-17.]

On April 15, 2015, Mazinda's attorney reached out to USCIS, stating, "we do not

understand why the information cannot be forwarded to us immediately, particularly in light of

the alien file being located at your office and because 8 C.F.R. 103.2(b)(16) seems to require it

be sent along with the denial notice."  [Filing No. 34-21.]  Mazinda asked USCIS whether a

regulation or directive required him to make a FOIA request.  On April 21, 2015, USCIS

responded that "by holding the case in abeyance as the FOIA is processed, allows this

inspection."  [Filing No. 34-23.]  The response also explained that directing applicants to make

FOIA requests "has lately been the policy of this office."  *Id.*

## III.   Standard of review

Defendants move to dismiss or for summary judgment on both of Mazinda's claims.

Defendants move to dismiss the FOIA claim for lack of subject matter jurisdiction and the APA

claim for failure to state a claim upon which relief can be granted.  Alternately, Defendants move for summary judgment on these claims.

> A.    **Motion to dismiss**

The purpose of a motion to dismiss is to test the sufficiency of the allegations in the complaint, not the merits of the case.  *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014).  Defendants' motion to dismiss Mazinda's FOIA claim is made pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging subject matter jurisdiction is not proper.  Faced with this challenge, Mazinda bears the burden of establishing subject-matter jurisdiction to survive Defendants' motion.  Fed. R. Civ. P. 12(b)(1); *Ctr. for Dermatology*, 770 F.3d at 589; *Apex Digital, Inc.*, 572 F.3d at 443.  However, as this is a jurisdictional issue, the Court may look at additional evidence submitted by the parties to determine whether subject matter jurisdiction exists.  *Apex Digital, Inc.*, 572 F.3d at 444.

Defendants' motion to dismiss Mazinda's APA claims is made pursuant to Fed. R. Civ. P. 12(b)(6), alleging Mazinda failed to state a claim upon which relief can be granted.  To survive this challenge, Mazinda's complaint "must state a claim to relief that is plausible on its face." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A facially plausible claim exists if the factual allegations allow the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* (citing *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).  At the pleadings stage, well-pleaded factual allegations are accepted as true.  *Id*; *Ctr. for Dermatology*, 770 F.3d at 588. However, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion."  *Adams,* 742 F.3d at 728.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

## B.    Summary judgment

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Durkin v. Equifax Check Services, Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing Fed. R. Civ. P. 56(c)). If the moving party demonstrates the absence of a material fact in issue and the non-moving party fails to present evidence of a material question, the court must enter summary judgment. *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Evidence is viewed in a light most favorable to the nonmoving party. *Tri-Gen, Inc. v. Int'l Union of Operating Eng'rs*, 105 F.3d 1024, 1030 (7th Cir. 2006). However, the movant gets the benefit of the doubt if the record contains competent evidence on both sides of a factual question. *Id.*

## IV.    Mazinda's FOIA claim

### A. Whether the Court lacks subject matter jurisdiction over Mazinda's FOIA claim

The first issue is whether Mazinda's FOIA claim can be dismissed as moot because Defendants have since responded to Mazinda's FOIA requests.[2] "Federal courts lack subject matter jurisdiction when a case becomes moot." *DJL Farm LLC v. U.S. E.P.A.*, 813 F.3d 1048, 1050 (7th Cir. 2016); *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011). "Accordingly, a case must be dismissed if an event occurs while a case is pending that makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *DJL Farm*, 813 F.3d at 1050; *Pakovich*, 653 F.3d at 492; *Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009).

---

[2] Although it is not in issue, Mazinda notes that he was not required to make an administrative appeal prior to filing this FOIA suit. Once Defendants failed to make a timely response, FOIA provided Mazinda immediate recourse through the Court. *Evans v. U.S. Dep't of Interior*, 135 F. Supp. 3d 799, 820 (N.D. Ind. 2015).

With FOIA claims, the Seventh Circuit consistently holds that "once the government produces all the documents a plaintiff requests, her claim for relief under the FOIA becomes moot." *Cornucopia Inst.*, 560 F.3d at 675; *Walsh v. U.S. Dep't of Veterans Affairs*, 400 F.3d 535, 536 (7th Cir. 2005).  Notwithstanding, the entire claim is not moot if a plaintiff can demonstrate that the court's adjudication will affect him in some way.  *Cornucopia,* 560 F.3d at 676.  For example, a plaintiff may demonstrate that he is seeking damages or an additional response to the FOIA request.  *Id.*  However, a claim for attorneys' fees does not prevent a FOIA claim from becoming moot.  *Id.*  "Simply because a claim is moot does not necessarily preclude the plaintiff from seeking attorneys' fees, because such a request survives independently under the court's equitable jurisdiction."  *Id.* at 676-77.

Mazinda's FOIA claim is moot and should be dismissed.  Defendants responded to Mazinda's FOIA requests while this case was pending.  On July 21, 2015, USCIS responded by producing five pages from Mazinda's A-File.  On August 17, 2015, CBP responded by explaining that USCIS is the custodian of Mazinda's A-File and that USCIS's response provided all responsive information.  CBP responded that it had no additional information to provide.  Mazinda requested the records the adjudicator relied upon in denying Mazinda's naturalization, which is what USCIS produced.  Although the responses from USCIS and CBP were untimely, it is impossible for the Court to grant Mazinda any effectual relief under FOIA.  Mazinda has not demonstrated that the Court's adjudication will affect him in any way, aside from attorney's fees.  Mazinda is not seeking an additional response to his FOIA request, and a request for attorneys' fees cannot save his claim.  As Defendants point out, once USCIS released all nonexempt material to Mazinda, there was no judicial function for the Court to perform under FOIA.

Mazinda argues the FOIA claim is not moot because it is not isolated from the APA claim.  However, Mazinda's claim that Defendants failed to respond to his FOIA requests is indeed separate from his claim that Defendants violated the APA by directing him to file a FOIA request instead of complying with 8 C.F.R. § 103.2(b)(16).  Mazinda requested specific records from USCIS and CBP through FOIA.  When he did not receive responses, he brought this action and asserted a FOIA claim for the failure of USCIS and CBP to respond, and APA claims for being directed to FOIA by USCIS.  However, Mazinda's claim that Defendants failed to respond to his FOIA requests was mooted as soon as Defendants responded.  Any Court adjudication on this FOIA claim will not affect Mazinda's APA claim that Defendants directed him to FOIA in order to avoid complying with 8 C.F.R. § 103.2(b)(16).

Mazinda also contends that Defendants' response was "voluntary cessation" that should not deprive this Court of its jurisdiction.  However, the doctrine of voluntary cessation only would apply if it is likely that Mazinda will again request information and the agency will again fail to produce it in a timely manner.  *Walsh*, 400 F.3d at 537.  Mazinda argues that Defendants could resume denying him access to information.  However, Defendants cannot take back their response and Mazinda does not allege any other information he plans to request through FOIA.

"The theoretical possibility that [Mazinda] might again have to wait for requested records is not enough to keep his claim alive."  *Walsh*, 400 F.3d at 537.  There must be a reasonable expectation that Mazinda would be subject to the same action again.  *Id.*  The Court acknowledges Mazinda's concern.  USCIS produced "surprise" allegations, which led to his FOIA request.  The fact that Mazinda had to file a lawsuit to access a five-page document is unfortunate.  Nevertheless, it is only theoretical that Mazinda will need to make another FOIA request and it is only theoretical that the agency will not timely respond.  As such, the doctrine of

14

voluntary cessation does not apply because there are no reasonable expectations that Mazinda will be subject to the same action again.

Mazinda's FOIA claim is moot and should be dismissed.  At the time Mazinda brought his complaint, Defendants had not yet responded to Mazinda's FOIA request.  When USCIS produced the five-page document that the USCIS adjudicator relied upon and referred to, Mazinda's FOIA request became moot.  Accordingly, this Court lacks subject matter jurisdiction over Mazinda's FOIA claim because he cannot articulate any additional relief which his FOIA claim entitles him.

### B.    Whether no material facts about the adequacy of Defendants search are in dispute and Defendants are entitled to judgment as a matter of law

Even if Mazinda's FOIA claim were not moot, Defendants are entitled to summary judgment.  Mazinda disputes whether Defendants made an adequate search for responsive information to his FOIA requests.  "To prevail on summary judgment in this type of FOIA claim, the agency must show that there is no genuine issue of material fact about the adequacy of its records search." *Rubman v. U.S. Citizenship & Immigration Servs.*, 800 F.3d 381, 387 (7th Cir. 2015).  A search was adequate if the agency shows that "it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id.*  "Reasonableness is a flexible and context-dependent standard." *Id.*

There is a presumption of good faith, which can be bolstered by "reasonably detailed nonconclusory affidavits submitted in good faith." *Id.* (quoting *Matter of Wade*, 969 F.2d 241, 249 n.11 (7th Cir. 1992)).  For example, an affidavit would set forth the search terms, the type of search performed, and allege that all files likely to contain responsive materials were searched. *Id.* (quoting Oglesby, 920 F.2d at 68).  In response to agency affidavits, the FOIA requester can present "countervailing evidence as to the adequacy of the agency's search." *Id.*  The requester

then must show why additional documents would have turned up if the agency had adequately searched. *Patterson v. IRS*, 56 F.3d 832, 841 (7th Cir.1995). This is a low bar "since neither the requester nor the court know the content of the agency's records." *Id*.

The question at summary judgment is not whether the agency might have additional responsive documents in its possession, but whether the search itself was performed reasonably and in good faith. *Rubman*, 800 F.3d at 387. "[I]f a review of the record raises substantial doubt about the adequacy of the search, particularly in view of well-defined requests and positive indications of overlooked materials, summary judgment in favor of the agency is inappropriate." *Id*. If the agency's search was a good faith effort and reasonable in light of the request, summary judgment is appropriate. *Rubman*, 800 F.3d at 387.

Summary judgment in favor of Defendants on Mazinda's FOIA claim is appropriate. The material facts about the adequacy of USCIS's search are undisputed. USCIS's search was adequate because it processed Mazinda's FOIA request by following standard procedures. Those procedures led it to reasonably determine that the adjudicator of Mazinda's naturalization application must identify exactly on what records he based his denial.

The search method used by Defendants to respond to Mazinda's FOIA request was reasonably calculated to uncover all relevant documents. The description of the search is provided by Eggleston's declaration. According to Eggleston, USCIS received Mazinda's request for the records referred to in its denial letter dated February 13, 2015, and sent it to NRC for processing. NRC began the process of responding by identifying Mazinda's A-File as the location of all documents related to his naturalization application. Once NRC obtained Mazinda's A-File, it searched for all documents related to his denial. NRC was unable to determine what the adjudicator relied on to deny Mazinda's naturalization application, so NRC

reached out to the adjudicator in Indianapolis.  The adjudicator reviewed Mazinda's file and identified a five-page document, which NRC reviewed and agreed was responsive.  NRC scanned that five-page document into its FIOA processing system and after redacting exempt portions, sent it to Mazinda with a cover letter identifying the document as USCIS's FOIA response.  This search process was reasonable in the context of Mazinda's FOIA request, where someone at USCIS's NRC was tasked with identifying a record that an adjudicator in Indianapolis relied on in making a decision.

Despite the low bar, Mazinda fails to present any evidence that USCIS's search could have turned up additional documents.[3]  Mazinda argues that Defendants failed to make an adequate search because USCIS did not produce the transcript of Mazinda's January 6, 2015, interview.  Mazinda asserts that this interview is responsive to his FOIA request because it is information the adjudicator relied on to deny his naturalization application.  However, Mazinda did not broadly request all information forming the basis of the denial.  Mazinda specifically requested "records that reveal on January 31, 2011, at a port of entry Mr. Mazinda acknowledged to Customs and Border Security and/or Port Authority that he was living and working in Sudan for the Government and he was working for the Sudan People Liberation Movement (SPLM) as an Executive Direcrtor."  [Filing No. 34-12.]  Mazinda's FOIA did not request a transcript, it did not request all information the adjudicator relied on, nor did it seek access to his A-File. Furthermore, Defendants point out that there is no transcript of the January 6, 2015, interview

---

[3] Mazinda was confronted with additional evidence of his membership in SPLM at the hearing on the denial of his naturalization application.  [Filing No. 34-33.]  Mazinda does not argue this evidence would have turned up with an adequate search.  Thus, it is apparent that the parties agree this information was discovered after the initial denial of Mazinda's application and is outside the scope of Mazinda's FOIA request.

because it was not videotaped or recorded. The only records from that interview are the adjudicator's notes on the naturalization application itself. Neither CBP nor USCIS could have produced a transcript because one does not exist. And even if one did exist, it still would not be responsive to Mazinda's FOIA request. USCIS's failure to produce an interview transcript that purportedly does not exist does not demonstrate that NRC's search was inadequate.

Similarly, Mazinda's supplemental brief points to a sworn statement he made at the interview on January 13, 2015. Mazinda argues that this would have been produced if the FOIA search was adequate. However, the sworn statement is essentially the opposite of what Mazinda requested. Mazinda's sworn statement alleges he is not and has never been a member of SPLM. Moreover, the sworn statement was made after USCIS questioned Mazinda about the CBP report that he was living in Sudan and working for SPLM as an executive director. In perspective, it is impossible for USCIS to rely on a sworn statement before it is generated. Mazinda's sworn statement is not responsive to his FOIA request and it would not be produced by an adequate search.

As Defendants point out, the only document that fits the description of Mazinda's FOIA request is the five-page document Mazinda received. FOIA does not require Defendants to produce records Mazinda did not request. Summary judgment in favor of Defendants is appropriate because NRC's search was performed reasonably and in good faith. In light of Mazinda's narrow and well-defined FOIA request, there are no indications of overlooked materials that would be responsive. In view of USCIS's process, the five-page record raises no doubt about the adequacy of the search. USCIS's search was a good faith effort and reasonable in light of the request, therefore summary judgment is appropriate.

### C.      Conclusion

Mazinda's FOIA claim is moot and must be dismissed.  Mazinda submitted a FOIA

request to USCIS that only sought records that reveal on January 31, 2011, Mazinda

acknowledged to CBP that he was living in Sudan and working for the SPLM as an executive

director, which USCIS referred to in the denial letter.

At the time Mazinda brought his complaint, Defendants had not yet produced any

response to Mazinda's FOIA request.  On July 21, 2015, USCIS produced the responsive

records—five pages that evidenced the January 31, 2011, exchange between Mazinda and CBP

that he was allegedly an executive director for SPLM.  Mazinda's FOIA claim is thus moot as

Defendants have provided him with the relief he seeks. Accordingly, this Court lacks subject

matter jurisdiction because Mazinda cannot articulate any additional relief which his FOIA claim

entitles him.

Moreover, Mazinda does not show why additional documents should have been produced

with an improved search.  The USCIS adjudicator identified the document he relied upon and

referred to, which USCIS produced in its FOIA response.  There is no genuine issue of material

fact about the adequacy of the search.  Thus, even if Mazinda's FOIA claim were not moot,

summary judgment in favor of Defendants is appropriate.

### V.      Mazinda's APA claims

Mazinda also brings claims under the Administrative Procedures Act, asserting that

Defendants violated 8 U.S.C. § 1429, "in denying Plaintiff copies of documents relied upon in

denying naturalization," and that Defendants violated 8 C.F.R. § 103.2(b)(16), "by failing to

provide Plaintiff access to adverse information that formed the basis of the denial."  [Filing No.

1, at ECF p. 10-11.]  Defendants contend that Mazinda fails to state a claim upon which relief

can be granted because 8 U.S.C. § 1429 does not apply and Mazinda's complaint admits that

USCIS complied with 8 C.F.R. § 103.2(b)(16).  Additionally, Defendants argue they are entitled

to summary judgment on the question of whether they complied with 8 C.F.R. § 103.2(b)(16),

because the record shows that USCIS read Mazinda the derogatory record almost verbatim when

questioning him about his association with SPLM.

### A.    Whether Mazinda fails to state a claim under 8 U.S.C. § 1429

Defendants argue Mazinda's claim that Defendants violated 8 U.S.C. § 1429 should be

dismissed because it does not entitle Mazinda to any relief.  Mazinda asserts that "Defendants'

wrongful conduct in denying [Mazinda] copies of documents relied upon in denying

naturalization violates 8 U.S.C. § 1429."  [Filing No. 1, at ECF p. 10.]  Looking past the

conclusory nature of this statement, section 1429 does not apply to Mazinda because it concerns

a person that "shall be naturalized."  Section 1429 does not discuss what documents or records

an applicant for naturalization is entitled to.  Mazinda's naturalization application was not

approved, so section 1429 does not apply to him.  Furthermore, Mazinda does not point to any

case that supports this claim and offers no argument that this claim is viable, making it all the

more apparent that obtaining any relief under this section is not plausible on its face.  As such,

Mazinda fails to state a claim under 8 U.S.C. § 1429 upon which relief may be granted and

dismissal of this claim is appropriate.

### B.    Whether Mazinda fails to state a claim under 8 C.F.R. § 103.2(b)(16)

Mazinda's complaint also alleges that "[h]e received a notice of denial that referred to

derogatory information, but [Defendants ]did not provide notice of the applicant's right to access

under 8 C.F.R. § 103.2(b)(16), nor of any other right to information or documents forming the

basis of the denial."  [Filing No. 1, at ECF p. 4.]  Mazinda's complaint alleges that "Defendants

have violated 8 C.F.R. § 103.2(b)(16) by failing to provide [Mazinda] access to adverse

information that formed the basis of the denial."   [Filing No. 1, at ECF p. 11.]

As a general rule, applicants are permitted to inspect the record of proceedings that

constitute the basis for the agency's decision.  8 C.F.R. § 103.2(b)(16).  However, when the basis

of that decision is derogatory information that the applicant is unaware of, the regulations only

allow the applicant to be advised of that information and given a chance to make a rebuttal

before a decision is rendered.  8 C.F.R. § 103.2(b)(16)(i). Specifically, the regulation provides:

> An applicant or petitioner shall be permitted to inspect the record of proceeding
> which constitutes the basis for the decision, except as provided in the following
> paragraphs.
> (1)  Derogatory information unknown to petitioner or applicant.  If the decision will
> be adverse to the applicant or petitioner and is based on derogatory information
> considered by the Service and of which the applicant or petitioner is unaware,
> he/she shall be advised of this fact and offered an opportunity to rebut the
> information and present information in his/her own behalf before the decision is
> rendered, except as provided in paragraphs (b)(16)(ii), (iii), and (iv) of this section.
> Any explanation, rebuttal, or information presented by or in behalf of the applicant
> or petitioner shall be included in the record of proceeding.

8 C.F.R. § 103.2(b)(16)(i).

Mazinda's complaint seeks production of or access to all the derogatory information upon

which USCIS based its adverse decision.  However, Mazinda's ability to inspect the record is

explicitly limited by § 103.2(b)(16)(i).  That section takes away Mazinda's right to view, receive,

or otherwise access the derogatory information.  *E.g., Mangwiro v. Napolitano*, 939 F. Supp. 2d

639, 646 (N.D. Tex. 2013) (8 C.F.R. § 103.2(b)(16) requires USCIS to inform petitioners of

adverse information only, and does not create a right to actual evidence).  Defendants argue 8

C.F.R. § 103.2(b)(16) therefore does not entitle Mazinda to the relief he seeks and the claim

should be dismissed.

Mazinda argues that he is entitled to relief because paragraph (ii), an exception listed in paragraph (i), provides him access to records related to his ineligibility for naturalization. Paragraph (ii) states, "[a] determination of statutory eligibility shall be based only on information contained in the record of proceeding which is disclosed to the applicant or petitioner." 8 C.F.R. § 103.2(b)(16)(ii). Mazinda argues that because the denial notice informed him that he was statutorily ineligible for citizenship, he is entitled to the relief he seeks. According to the complaint, Mazinda sent a request to USCIS to "schedule a time to review [Plaintiff's] alien file or, at the very least, the record cited in the denial of his application for naturalization." [Filing No. 1, at ECF p. 8-9.] Mazinda's complaint further alleges that he explained to USCIS that he "read 8 C.F.R. § 103.2(b)(16) to state we shall be permitted to inspect the record of proceeding which constitutes the basis for the decision." [Filing No. 1, at ECF p. 8-9.] Yet, USCIS directed him to FOIA rather than allow him access.

However, a key word in paragraph (ii) is "eligibility." Because Mazinda was found ineligible, Defendants contend that paragraph (ii) does not bring life to Mazinda's claim. The effect of paragraph (ii) was recently addressed in *Sehgal v. Lynch*, 813 F.3d 1025, 1031 (7th Cir. 2016). In *Sehgal*, plaintiff argued that USCIS violated 8 C.F.R. § 103.2(b)(16) by not providing a document from the administrative proceedings. *Id.* The *Sehgal* court explained that § 103.2(b)(16)(ii) prohibited USCIS from basing a determination of statutory eligibility on undisclosed information, but found no error because USCIS summarized the evidence it relied on in finding the applicant ineligible for residency. *Id. Seghal* pointed to the ruling in *Ghaly v. INS*, 48 F.3d 1428, 1435 (7th Cir. 1995). In *Ghaly,* the court explained that the regulations do not mandate that applicants can view each and every piece of derogatory information relied on in the

denial.[4]  *Id.*  Rather, the regulations only require "a summary of the grounds sufficient in detail to explain its reasoning."  *Id.*  In other words, Defendnats complied with paragraph (i) when they orally confronted Mazinda with the derogatory information during his interview and paragraph (ii) does not compel disclosure of those records by USCIS.  As such, Mazinda's complaint does not allege any relief to which he is plausibly entitled.  Mazinda's complaint therefore fails to state a viable claim for relief under 8 C.F.R. § 103.2(b)(16), and dismissal is appropriate.

### C.  Whether any material facts are in dispute and Defendants are entitled to judgment as a matter of law

As with Mazinda's FOIA claim, even if his APA claim were not dismissed, summary judgment in favor of Defendants would be appropriate.  To the extent that 8 C.F.R. § 103.2(b)(16) required USCIS to reveal derogatory information to Mazinda and allow him an opportunity to rebut it, it is undisputed that Defendants complied.

In Mazinda's January 13, 2015, interview, the USCIS immigration officer went over derogatory information with Mazinda.  According to the officer's declaration, the only derogatory information she relied on was "a record containing Mr. Mazinda's statements to Customs and Border Patrol on January 31, 2011, representing that he was the Executive Director

---

[4] Mazinda's view of the regulations is more in line with Judge Posner's concurring opinion in *Ghaly*.  Judge Posner explained that in light of the requirements in the regulations and the harshness of the law, he would expect the agency to make the document on which it based the decision available.  *Id.* at 1437.  Judge Posner described the agency's nondisclosure as "inexplicable, offensive, and absurd" because it put the applicant in a weak position to rebut the evidence.  *Id.*  Nevertheless, Judge Posner reluctantly concluded that the agency had derogatory information, which was summarized for the applicant, and the "procedural sloppiness" of nonproduction was not grounds for reversal.  *Id.* at 1438.  The agency accepted a rebuttal from the applicant, which was only diluted by the nonproduction of evidence.  *Id.* at 1437.  All told, Judge Posner was persuaded to concur with the majority's opinion.  *Id.* at 1438.  Mazinda argues that his circumstances are different than those in *Ghaley* and points to interpretations of § 103.2(b)(16)(i)-(ii) from courts within the Ninth Circuit, the Board of Immigration Appeals, and the ABA.  However, given that the Seventh Circuit has addressed this interpretation, the Magistrate Judge will not elsewhere for guidance.

of SPLM." [Filing No. 42-3, at ECF p. 3.] The officer verified the date Mazinda was questioned by CBP at the port of entry. The officer asked Mazinda about his affiliation with SPLM, and asked whether he was a member. Mazinda repeatedly denied being a member, rebutting the officer's assertion by talking about his volunteer work with SPLM, mainly providing translation and education. The officer even read the derogatory information from the CBP record to Mazinda, almost verbatim, and said, "I still don't understand why they would think that you were a member of the group when they talked to you at the port of entry, that you were a member of the SPLM, especially an executive director." [Filing No. 34-5, at ECF p. 16-17.] Mazinda responded that it was impossible for him to be an executive director for SPLM. Based on this evidence, the Magistrate Judge concludes that USCIS's officer revealed the derogatory information to Mazinda and allowed him an opportunity to rebut it.

Mazinda does not dispute that Defendants revealed this information to him in the interview or assert that he was not allowed to explain his side of the story. Instead, Mazinda takes issue with USCIS directing him to file a FOIA request to access the CBP record, claiming it violated 8 C.F.R. § 103.2(b)(16)(ii) and greatly prejudiced him. But as just discussed, § 103.2(b)(16)(ii) does not require USCIS to produce this record. And as Defendants point out, 8 C.F.R. § 292.4(b) allows USCIS to direct applicants to file a FOIA request in order to obtain the record of proceeding. *See* 8 C.F.R. § 292.4(b) ("A party to a proceeding and his or her attorney or representative will be permitted to examine the record of proceeding in accordance with 6 CFR part 5 [FOIA Statute].")). Directing Mazinda to FOIA was not unlawful because the regulations provide for this process. Nor was it greatly prejudicial to Mazinda because USCIS permitted him a hearing on the denial and held his case in abeyance until his FOIA claim was processed.

Overall, USCIS advised Mazinda of the derogatory information, produced the derogatory information, and provided multiple opportunities at the interview for him to rebut the information.  Defendants complied with § 103.2(b)(16).  There are no material facts in dispute and summary judgment in favor of Defendants on Mazinda' APA claim that Defendants violated 8 C.F.R. § 103.2(b)(16) is thus appropriate.

**D.    Conclusion**

Mazinda fails to make an APA claim upon which relief can be granted and dismissal is appropriate.  As an applicant that was denied for naturalization, 8 U.S.C. § 1429 does not apply and provides Mazinda no basis for relief.  Mazinda also fails to state a claim under 8 C.F.R. § 103.2(b)(16) upon which relief can be granted because that section did not require USCIS to produce the derogatory information it relied on to find Mazinda ineligible for naturalization.  Furthermore, the Seventh Circuit has not interpreted 8 C.F.R. § 103.2(b)(16) to require USCIS to produce documents in his situation.  Mazinda's APA claims therefore fail to entitle Mazinda to any relief and should be dismissed.

Moreover, Mazinda does not show USCIS failed to reveal its derogatory information to him at his interview or allow him an opportunity to rebut it.  The USCIS officer discussed the CBP record with Mazinda and gave him many opportunities to explain himself, which he did.  There are no genuine issues of material fact that this disclosure or rebuttal took place.  Thus, even if Mazinda's APA claim were viable, summary judgment in favor of Defendants is appropriate.

**VI.    Leave to amend Mazinda's complaint**

The remaining issue is whether Mazinda should be allowed leave to amend his complaint.  To the extent that Mazinda is attempting to make a policy challenge, amendment is appropriate.

In its current form, however, the complaint is far from clear.  For example, ¶ 37 references a statute that does not exist, and in the prayer for relief Mazinda requests an order finding Defendants "fail[ed] to provide requested information and documents within the time requirements set forth in 5 U.S.C. § 552(a)(6)(A), (B), and (C), and 6 C.F.R. § 5.6(h)."  [Filing No. 1, at ECF p. 11.]  Such a request for ruling is unclear because § 552(a)(6)(A)-(C) is a broad section, including many subparts spanning two pages, and 6 C.F.R. § 5.6(h) does not exist.  Mazinda's complaint discusses some policy concerns in the statutory framework section, but it does not make any clear claims about Defendants' policies.

As discussed at the outset of this entry, the claims addressed here apply only to Mazinda's case on an individual basis.  Mazinda's briefing on the pending motions suggests that he has some policy concerns, though their viability is uncertain.  Thus, the Magistrate Judge recommends that Mazinda be given 21 days to amend his complaint to the extent that he is indeed attempting to assert any policy claims.  And if said claims are asserted, counsel shall more carefully reference any applicable regulations or statutes, if Mazinda's counsel believes any such reference is necessary.  If Mazinda does not file an amended complaint within the time allowed, this case should be dismissed with prejudice.

## V.     Conclusion

Defendants' motion [Filing No. 20] should be granted.  It is appropriate to dismiss the FOIA and APA claims.  USCIS produced the records that its adjudicator relied upon in denying Mazinda's naturalization application, rendering Mazinda's FOIA claim moot and leaving this Court without subject matter jurisdiction.  Mazinda fails to state a claim under 8 U.S.C. § 1429 upon which relief may be granted because that statute does not apply to Mazinda's situation.  Mazinda also fails to state a claim under 8 C.F.R. § 103.2(b)(16) upon which relief can be

granted because that section did not require USCIS to produce the derogatory information it relied on to find Mazinda ineligible for naturalization.  It is also appropriate to grant summary judgment in favor of Defendants on the FOIA and APA claims.  Defendants performed an adequate FOIA search and complied with 8 C.F.R. § 103.2(b)(16).

As explained in the prior section, however, judgment should not be entered at this time. While the Magistrate Judge is not encouraging Mazinda to file an amended complaint, he should have 21 days to do so if there is some good faith basis for doing so.  This is not an oopprtunity for Mazinda to reassert the claims addressed here.  If Mazinda files an amended complaint, it shall assert a new claim about Defendants' policy.  If Mazinda does not file an amended complaint within the time allowed, this case should be dismissed with prejudice and judgment should be entered.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1).  Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 9/29/2016

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

Sarah L. Moshe
LEWIS & KAPPES PC
smoshe@lewis-kappes.com

Thomas R. Ruge
LEWIS & KAPPES PC
truge@lewis-kappes.com

Christopher Westley Dempsey
U.S. DEPARTMENT OF JUSTICE
christopher.dempsey@usdoj.gov

Emily B. Nestler
U.S. DEPARTMENT OF JUSTICE (D.C.)
emily.b.nestler@usdoj.gov

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov

Danielle Kathleen Schuessler
US DEPARTMENT OF JUSTICE, CIVIL DIVISION
danielle.k.schuessler@usdoj.gov